

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 14, 2019

**BY ECF AND EMAIL**
The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *United States* v. *Frank Bright*, 18 Cr. 56 (KPF)

Dear Judge Failla:

On Christmas Eve 2014, Amaury Paulino and his girlfriend, Natasha, were supposed to tell their family that they were expecting their first child. But that day, the defendant, Frank Bright, shot and killed Amaury just three days after Amaury's 23rd birthday. The defendant killed Amaury because Amaury would not hand over his valuables when the defendant robbed him at gunpoint. The defendant killed Amaury because—as the defendant brazenly and callously boasted to his friends—Amaury "didn't respect the jux."

The defendant murdered a young man who did not deserve to die. In doing so, the defendant also destroyed the lives of Amaury's entire family, especially the life of Amaury's unborn son. Because of the defendant, the holidays for Amaury's family now consist of tearful gatherings at the cemetery, as Amaury's family members describe in their many letters to the Court. Because of the defendant, Amaury never had the opportunity to hug or hold his son. Because of the defendant, Amaury's son is growing up without the love and support of his father. Because of the defendant, Natasha will never have fond memories of Amaury and her son together. Instead, Natasha will be haunted by the heartbreaking moment when her son cried out "Daddy!" as a picture of the father-he-never-met was published during the defendant's trial.

In light of the tremendous pain and suffering the defendant has caused, and for the other reasons discussed below, the Government respectfully submits that a sentence of 240 months' imprisonment is just and appropriate.

**A. The Offense Conduct**

The Court is well aware of the facts of this case, having presided over the defendant's trial from April 1, 2019, through April 9, 2019. Accordingly, the offense conduct is set forth only briefly below.

Hon. Katherine Polk Failla                                                          Page 2
August 14, 2019

On December 24, 2014, John Duncan approached Amaury Paulino and his friend, Lazaro Martinez, near a barbershop on West 144th Street and Broadway in Manhattan. (PSR ¶ 15).  After a brief conversation, Martinez and Amaury agreed to sell Duncan some pills.  (*Id.*)  The three men arranged to meet later that day.  (*Id.*)

After arranging the pill purchase, Duncan called the defendant. (PSR ¶ 16).  Duncan called the defendant because he wanted the defendant to "hold him down," meaning provide protection in the event something went wrong.  (*Id.*)  The defendant told Duncan that, because the pills were being sold at a low price, the pills must be fake.  (*Id.*)

Duncan and the defendant came up with a plan to rob Martinez and Amaury of the pills and the jewelry they were wearing.  (PSR ¶ 17).  They decided that they were going to rob Martinez and Amaury near the Gladys Hampton Houses, located at the intersection of West 129th Street and St. Nicholas Avenue in Manhattan.  (*Id.*)

Duncan and the defendant met at 400 St. Nicholas Avenue to plan the robbery.  (PSR ¶ 18).  They planned to get into the car with Martinez and Amaury, then Duncan would take out his money as if he was going to buy the pills, and then the defendant would take out his gun and demand everything.  (*Id.*)

After Martinez and Amaury obtained the pills, they called Duncan and set up a meeting. (PSR ¶ 19).  Martinez and Amaury parked in front of 400 St. Nicholas Avenue at approximately 4:30 p.m. and Duncan and the defendant got in the car.  (*Id.*)  Amaury was in the driver seat, Martinez was in the front passenger seat, the defendant was seated behind Amaury, and Duncan was seated behind Martinez.  (*Id.*)  Martinez handed the pills to Duncan and the defendant pulled out a gun.  (*Id.*)  The defendant told Amaury and Martinez to put their hands in front of them and to give up their jewelry and what they had in their pockets.  (*Id.*)  Amaury refused, at which point the defendant shot Amaury from behind. (*Id.*)  The bullet went through Amaury's heart, caused massive internal bleeding, and ultimately caused his death.  (PSR ¶ 20).

After the robbery and shooting, the defendant told Duncan and another cooperating witness on separate occasions that the defendant shot Amaury because Amaury "didn't respect the jux"— that is, Amaury did not "respect" that the defendant was robbing him. (PSR ¶ 21).

**B.  Procedural History**

On January 24, 2018, a grand jury in this District returned Indictment 18 Cr. 56 (KPF), charging the defendant and John Duncan with (1) conspiracy to commit Hobbs Act robbery, (2) Hobbs Act robbery, and (3) murder through the use of a firearm.  (PSR ¶¶ 1-4).

In December 2018, John Duncan accepted responsibility for, among other things, his role in the murder of Amaury Paulino and pleaded guilty pursuant to an agreement with the Government.  The defendant, however, chose not to accept responsibility at that time and instead exercised his right to a jury trial.

Hon. Katherine Polk Failla                                                                    Page 3
August 14, 2019

From April 1, 2019, through April 9, 2019, the Court presided over the defendant's trial. At that trial, the Government presented substantial evidence, including eyewitness testimony, security video, call detail records, and cell-site location data, that established that the defendant shot and killed Amaury during a robbery. The jury, however, was unable to reach a unanimous verdict.

Ten days later, on April 19, 2019, the defendant acknowledged that the jury had gotten it wrong. On that day, the defendant pleaded guilty to Count One of the Indictment. In his plea agreement with the Government, the defendant agreed that the Guidelines for first-degree murder apply "because during the robbery conspiracy **the defendant shot and killed Amaury Paulino** under circumstances that would constitute murder under 18 U.S.C. § 1111." Plea Agreement at 2 (emphasis added).

### C. The Applicable Guidelines Sentence and Probation's Recommendation

The United States Probation Department ("Probation") and the parties agree that the Guidelines calculation yields a range far in excess of the 240-month statutory maximum term of imprisonment. Therefore, in this case, the Guidelines call for a sentence of 240 months' imprisonment.

Probation recommends a sentence of 240 months' imprisonment. (PSR at 20). Probation reasons as follows:

> Bright's deliberate actions resulted in the death of a 23-year-old. The robbery was calculated and planned and driven by the suspicion that the drugs that were intended to be purchased were fake. Furthermore, following the robbery and shooting, Bright told his co-defendant and another individual that he shot the victim because the victim did not respect the robbery. The defendant's actions and subsequent reasoning and/or rationale are not indicative of someone who is a "good person who made a poor decision." Rather, they are reflective of an individual who has no regard for the value of a life. But for the statutory 20-year maximum penalty, the defendant's Guideline range of imprisonment would have been 324 to 405 months. Accordingly, Bright has already benefited from his plea, which limited his custodial exposure and may not fully capture the severity of the defendant's criminal behavior. As such, we respectfully recommend and believe that the Guideline sentence of 240 months' imprisonment is warranted and best serves the sentencing objectives of just punishment, deterrence, and protection of the community.

(PSR at 21).

**D. Discussion**

**1. Applicable Law**

As the Court is well aware, the Guidelines provide important guidance and "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007). After calculating the applicable Guidelines range, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)   to protect the public from further crimes of the defendant; and

(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**2. A Guidelines Sentence of 240 Months' Imprisonment is Necessary**

A Guidelines sentence of 240 months' imprisonment is necessary in this case for several reasons.

*First*, a Guidelines sentence is necessary to reflect the seriousness of the offense and to provide just punishment for the offense. The defendant is guilty of the most serious of crimes: murder. In this case, the defendant's actions were heinous and cowardly. The defendant shot Amaury from behind. Amaury was unarmed and posed absolutely no threat to the defendant. The defendant shot Amaury because Amaury did not "respect" the fact that the defendant was robbing him. The defendant's complete indifference to human life and his perverted "rationale" for his actions are shameful and disturbing. If there were any doubt about the pain and suffering the defendant has caused and the many lives he has ruined, the Court need only look at the letters that Amaury's family have submitted:

- Natasha Rosario, the Mother of Amaury's Son: "On December 24th, 2014 i was suppose to be telling my mother the good news that Amaury and I were expecting our first child, instead I had to give her the new that he has passed. A holiday is something your suppose to look forward too but instead to me Christmas Eve is a day I wish I could skip each calendar year. My son never met his father. He will never know how

one of his hugs feel like because of Frank Bright and John Duncan. He will not understand until he's older why I no longer wish to celebrate Christmas or why I don't like walking past certain streets. My child will never understand what is to receive a fathers love because of December 24, 2014." Ex. A

- <u>Scarlet Paulino, Amaury's Sister</u>:  "[M]y brother meant everything to me. I couldn't believe it the only man who raised me and took care of me growing up was gone. … When you think of amaury you think of that big smile that when he walked in the room with it everyone else couldn't do nothing but give a huge smile back. My brother was smart, thoughtful, funny, and most importantly caring he cared so much about the people he loved. I as his sister don't attend the court dates to not go back in time to feel it just mentioning him or the situation gives me heartache and heartaches is what every human being tries to avoid this guy who killed him didn't just take away a man he took away a brother a friend a cousin a son and the most hurting a father he didn't get to meet his beautiful son who never wants to leave his grave when we go visit him. I would do anything and everything to make my brother come back home to his family and meet his new niece and his son !"  Ex. B.

- <u>Jaymarie Genao, Amaury's Niece</u>:  "[M]y uncle was a very loving and kind and trustworthy person and our bond was always unbreakable . But , when I found out what happened I couldn't believe what I heard . I thought it was impossible . …  I never really understood how or why someone could ever do this to a innocent man . At that moment I just broke down in tears and since that day nothing has never been the same . This incident happened on Christmas Eve and this holiday won't be the same for me anymore . Losing someone I love is really hard . It's mostly hard to except the fact that he is gone . I was always there for Amaury Paulino and he has always been there for me . He was really overprotective with me and I always knew why . I'm not saying I was his favorite niece but , I sure did mean a lot to him . He will always have a place in my heart and I will always think of him . But , it would be better if he was here."  Ex. C.

- <u>Thomas Sanchez, Amaury's Uncle</u>:   Amaury "was a young respectful man with aspirations of doing good for his own little family he was having. No longer is December 24 Christmas Eve it's the day we lost one of the brightest pieces in our family. While everybody celebrates Christmas New Years we stand at a cemetery full of tears and things never said to some one we love that we will never be able to hear him speak our names or even tell us to be safe or whatever else that will forever be left unsaid."  Ex. D.

- <u>Stephanie Rosa, Amaury's Cousin</u>:  "[M]y children and I are hurting everyday because we are no longer able to see his beautiful smile. Amaury was very family oriented, his passing has cost our family to no longer celebrate the holidays.  My autn Carmen Reyes is not the same after the tragic death of her loving son."  Ex. E.

Hon. Katherine Polk Failla                                          Page 6
August 14, 2019

- <u>Vanessa Andrada, Amaury's Cousin</u>:  "The day of my cousin Amaury death hurt me so much and still hurts me a lot. Amaury was such a nice , caring and loving person. He was a young man leaving a family behind and forming his little family. There are days that I dream of my cousin Amaury smile. I picture him here with us he was the light of my family eyes. There's no holidays without Amaury. On Christmas and New Years the family gathers to tears in a cemetery. This is not fair for us his family, or his son to grow with out a father. I miss and will always love Amaury Paulino."  Ex. F.

- <u>Yessenia Andrada, Amaury's Cousin</u>:  "Every holidays is not the same every December 24, 25, 31 we have to visit the cemetery crying for Amaury paulino loss. Frank wright left a child fatherless he left this family in pain, I went through a really taught time myself since I was 36 week pregnant I was going through depression , stress pain after my cousins loss to the point I had to get an induce labor. This was a very traumatic time and situation and the fact that my family and myself was all present at Mr Frank Wright trial we had to revive all this pain all over again. It was more painful to witness how Mr. Wright was planning on killing my cousin Amaury Paulino. All we are asking is for the correct justice to be serve he marked this family for life. Yesterday he killed my cousin tomorrow who can it be?"  Ex. G.

- <u>Edwin Reyes, Amaury's Cousin</u>: "I think I speak for everyone related to AMAURY that we are devastated by his passing, Family & holidays haven't been the same since. Now all we have left are memories of who and what he meant to us. There isn't words to describe how such a tragedy like this will make anyone feel, but (ME) we are beyond heart broken." Ex. H.

- <u>Erika Reyes, Amaury's Cousin</u>: "I remember it like it was yesterday when i recieved the worst call of my life . The pain of loosing amaury has not heeled and i know it will never heel . I do not wish this pain on anyone , not only was he my cousin he was my best friend my brother. There was not a day in my life that passed and we didnt speak. Everyday i miss him more and more . His absence has broke my family and I down. Every year on Christmas eve instead of celebrating and opening gifts my family and I go to the cementary and cry because its still so unreal how hes gone .We lost him on a holiday, 2 days after his birthday this pain is unbearable . Amaury wasn't perfect but he didn't deserve to die how he did , no one deserves that." Ex. I.

- <u>Melvin Reyes, Amaury's Cousin</u>: "[T]he situation that my family and I have been going thru ever since that horrifying incident. It's hard to express they're is no amount of emotions or words that could make anybody or any one understand what he meant to us as A brother cousin nephew or father ever since December 24 2014 we have been living a cruel truth about what took place that last day of our beloved Amaury Paulino life." Ex. J.

- <u>Sadha Maldonado, Melvin Reyes' Girlfriend</u>: "This horrible tragedy has affected not only myself but his whole entire family, as an outsider I see the pain and suffering his whole family has and are still going through. It hasn't been easy for them. Holidays

> family reunions will never be the same he left behind not only his family but a young
> handsome little boy that shouldn't grow up without his father because someone decided
> to take his life away. His son will not know his father unless it's via his family and the
> memories they have or the stories they have about his father. That day caused a
> snowball affect that will never stop." Ex. K.

The seriousness of the offense, the need to provide just punishment, and the enormous pain and
suffering the defendant has caused demand a sentence of 240 months' imprisonment.

 *Second*, a sentence of 240 months' imprisonment is necessary to promote respect for the
law, to afford adequate deterrence to criminal conduct, and to protect the public from further
crimes of the defendant. After the defendant killed Amaury in 2014, he continued to commit
crimes. In September 2016, the defendant was arrested for unlawfully possessing a .40 caliber
Glock with hollow point ammunition. (PSR ¶ 40). Two months later, in November 2016, the
defendant punched, stomped, and choked a woman while she was on the floor. (PSR ¶ 41). The
defendant, who bears a teardrop tattoo next to his right eye and a tattoo with the phrase "thug life"
on his stomach, celebrates his criminal lifestyle. (PSR ¶ 58(e) & (f)). His murder of Amaury
Paulino and his actions since then reflect that he has no respect for the law, that he is not easily
deterred, and that the public needs to be protected from him.

 *Third*, the factors that the defense sentencing submission discusses, which are addressed
below, do not warrant a sentence below 240 months' imprisonment.

 *The Defendant's Failure to Fully Accept Responsibility.* While the defendant has pleaded
guilty, and in that technical sense "taken responsibility for his actions," Def. Sub. at 1, the
defendant's guilty plea is a far cry from a complete acceptance of responsibility for the full extent
of his criminal conduct.

 The defendant has been lying about, minimizing, and otherwise equivocating on his
involvement in the murder of Amaury Paulino for over four years. When police first interviewed
the defendant on January 20, 2015, the defendant lied and denied having any involvement in the
robbery and murder of Amaury Paulino. After he was indicted in this case in January 2018, the
defendant—unlike John Duncan—chose not to accept responsibility before going to trial. Notably,
while the defendant agreed in his plea agreement that he shot and killed Amaury, he could not
bring himself to say those words during his plea allocution and acknowledge in open court the full
extent of his horrendous actions. Instead, he relied on the anodyne statement: "During the robbery,
Mr. Paulino was shot and killed." Plea Tr. 35:17-21. Furthermore, after his guilty plea, the
defendant considered trying to withdraw his guilty plea, giving no indication that he is genuinely
remorseful or that he has fully come to terms with what he has done. At a court conference on
June 17, 2019, the defendant astoundingly claimed that he "felt like [he] was misled into taking
[]his plea deal." Tr. 4:23-24. He insisted to the Court that he wanted to withdraw his plea and
proceed to a second trial. Tr. 6:2-8. At that conference, the Court appointed Mr. Mr. Meringolo
to advise the defendant. The Court held a second conference the following week, on June 26,
2019. To the surprise of defense counsel, on the morning of the conference the defendant requested
even more time to decide how he wanted to proceed, despite previously giving Mr. Meringolo the
impression that a resolution had been reached. Tr. 2:16-23. Finally, on July 19, 2019, the

Hon. Katherine Polk Failla                                                    Page 8
August 14, 2019

defendant confirmed that he wished to proceed to sentencing in this matter.  However, unless and until the defendant admits clearly and unequivocally in open court that he shot and killed Amaury Paulino, it is simply not fair to say that the defendant has completely accepted responsibility.

   *The Defendant's Supposed Narcotics Use*.  The defense claims that the defendant was "under the influence of narcotics" on December 24, 2014.  Def. Sent. Sub. at 1.  As an initial matter, there is no basis, any than the defendant's say-so, to believe that he had a narcotics addiction or otherwise used narcotics at the time of Amaury's murder.  In any event, it is wholly irrelevant.  As the security video from 400 St. Nicholas Avenue played at trial shows, the defendant was alert and deliberate in his planning of the robbery with John Duncan.  If he used some unspecified narcotics that day, they had no effect whatsoever on his behavior.

   *The Defendant's Family Support*.  The defense sentencing submission makes much of the defendant's "strong family support."  Def. Sent. Sub. at 1.  To be sure, unlike many defendants who appear before the Court for sentencing, the defendant was "blessed to have good parents;" he was fortunate to grow up as part of a "close knit" family; he "did not want for anything during his childhood, and he was reared in a loving and caring home;" he disclaims "any trauma during his childhood," and he even had a "best friend" in his sister growing up.  (PSR ¶¶ 49, 50, 55).  But even with that relatively fortunate upbringing and strong family support, the defendant *still* murdered Amaury Paulino.  If the defendant's strong family support did not stop him from murdering Amaury Paulino, there is no reason to believe that it will stop him from committing further crimes in the future.

   In fact, even with his fortunate background and family support, the defendant undertook little serious effort to lead a law-respecting and law-abiding life prior to his arrest in this case.  After several months of demolition work in 2005, the defendant had no employment to report and did nothing to advance his education for about 10 years, when he obtained a part-time seasonal job with Amazon in April 2015, a few months after he killed Amaury.  (PSR ¶¶ 68, 69).  Other than part-time seasonal employment with Amazon and about a month of part-time work at Walmart, the defendant has no other recent employment to report.  (PSR ¶¶ 65-68).

   *The Defendant's Behavior after the Murder and before His Arrest*.  The defense argues that "[f]rom December 24, 2014 until his arrest in January of 2018 [the defendant] did not commit a crime of violence and was a productive member of society."  Def. Sent. Sub. at 1.  Not quite.  As discussed above, the defendant was arrested in September 2016 for unlawfully possessing a .40 caliber Glock with hollow point ammunition, and then in November 2016, the defendant punched, stomped, and choked a woman while she was on the floor.  (PSR ¶¶ 40, 41).  Furthermore, as discussed further above, while the defendant apparently had unverified, part-time, seasonal employment from April 2015 until January 2017, in addition to other unverified, part-time work from February 2017 until late-March 2017, the defendant was unemployed from 2005 to April 2015 and again unemployed from April 2017 until his arrest in January 2018.  (PSR ¶¶ 65-69).

   *The Defendant's Behavior While Incarcerated*.  The defense seeks credit for the fact that the defendant did not attack one of the cooperating witnesses against him when given the opportunity.  Def. Sub. at 1-2.  No such credit is due.  A defendant should not be rewarded for all the crimes that he did *not* commit.  It would be a perverse system of justice that, for example,

Hon. Katherine Polk Failla                                                    Page 9
August 14, 2019

congratulates and rewards bank robbers for all the banks that they did *not* rob, rather than punishes them for the banks that they *did* rob.  Furthermore, the defendant abstained from violence (i) while under the watchful eye of the Bureau of Prisons and (ii) while awaiting sentence by a judge who would adversely consider any violent behavior he committed while in prison.  Good behavior in those circumstances has little predictive value when assessing the defendant's likely return to violence when he is released from prison, not under constant observation by authorities, and without a sentencing judge to impress.

*The Defendant's Incarceration at the MDC*.  The defendant's time at the MDC provides no basis for a downward variance.  *See* Def. Sub. at 2.  Caselaw is instructive here.

The Second Circuit has recognized that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." *United States* v. *Carty*, 264 F.3d 191, 196 (2d Cir. 2001).  However, the Second Circuit in the same opinion alluded that such departures were applicable only where the conditions of pre-sentence confinement were so severe as to take a particular case outside the heartland of the applicable Guideline. *Id.*; *see also United States* v. *Mateo*, 299 F. Supp. 2d 201, 208 (S.D.N.Y. 2004) ("courts have granted relief generally where the conditions in question are extreme to an exceptional degree and their severity falls upon the defendant in some highly unique or disproportionate manner.").

The conditions of confinement at the MDC do not rise to the "exceptional degree" and "severity…upon the defendant in some highly unique or disproportionate manner" contemplated by the caselaw.  In *Carty*, the defendant was detained for approximately eight months in a Dominican prison, where he claimed he was held in a four-foot by eight-foot cell with three or four other inmates, there was no light in his cell, he received ten to fifteen minutes per day outside of his cell to bathe, his only toilet was a hole in the ground, and he lost forty pounds during that time as a result. *Carty*, 264 F.3d at 193.  In *Mateo*, the defendant was subject to sexual abuse by a prison guard and then had to give birth without medical care. *Mateo*, 299 F. Supp. 2d at 211.  As a result, the district court found in *Mateo* that the trauma suffered by the defendant was extraordinary and inflicted upon her to a disproportionate degree and applied a downward departure. *Id.* at 212.

*The Defendant's Medical Issues*.  The Government acknowledges that the defendant has suffered from seizures in the past and takes medication to control them, but disagrees that his condition somehow warrants a downward variance.  Def. Sub. at 2.  There is no indication that the defendant will not receive adequate treatment for his condition while incarcerated.  In fact, the last time the defendant experienced a seizure was in December 2017, i.e., prior to his arrest and detention in this case.  (PSR ¶ 59).

*The Role of New York in Amaury's Murder*.  The defense suggests that "a Court order that would forbid Mr. Bright from entering New York after his release from incarceration" would decrease the defendant's likelihood of recidivism because "the greatest influence on Mr. Bright's criminal conduct was his environment." Def. Sub. at 3.  This is baseless.  As the defendant's three *Pennsylvania* cases demonstrate, he is more than capable of committing crimes outside of the Empire State.  (PSR ¶¶ 40, 41, 46).  But more importantly, New York is not to blame for Amaury's murder.  It should come as no surprise that there are many people who grew up and lived in the

Hon. Katherine Polk Failla                                                    Page 10
August 14, 2019

same environment as the defendant, but who have not committed gunpoint robbery and murder. Amaury's murder was the result of deliberate choices the defendant made. Those choices were not inevitable and have nothing to do with New York.

Even if the Court finds any of the defense's arguments for a downward variance compelling, the 240-month cap on the available term of imprisonment more than adequately compensates for any mitigating factors in this case, in which the Guidelines, according to Probation, would otherwise be 324 to 405 months' imprisonment.

* * * * *

The defendant murdered Amaury Paulino in cold blood. He left an unborn child without a father, a young woman without a partner, a mother without a son, and a family in ruins. To achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a), the Government respectfully requests that the Court impose a sentence of 240 months' imprisonment.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By: /s/ _____
Justin V. Rodriguez
Michael D. Longyear
Jordan L. Estes
Assistant United States Attorneys
(212) 637-2591

cc:     Counsel of record (by ECF)

# <u>Exhibit A</u>

## (Letter from Natasha Rosario, Mother of Amaury's Son)

**From:**     natasha rosario
**To:**       Rodriguez, Justin (USANYS) 8
**Subject:**  Re: My email address/contact information
**Date:**     Wednesday, August 7, 2019 5:34:17 PM

Dear Judge Failla,

After 4 years of waiting for answers, having to sit through two very emotional weeks of trial and dealing with a tedious trial outcome; I can somewhat say I know what happen to the heartless individuals who took my sons fathers life. On December 24th, 2014 i was suppose to be telling my mother the good news that Amaury and I were expecting our first child, instead I had to give her the new that he has passed. A holiday is something your suppose to look forward too but instead to me Christmas Eve is a day I wish I could skip each calendar year. My son never met his father. He will never know how one of his hugs feel like because of Frank Bright and John Duncan. He will not understand until he's older why I no longer wish to celebrate Christmas or why I don't like walking past certain streets. My child will never understand what is to receive a fathers love because of December 24, 2014. These individuals will still have the gift of life after their time served but Amaury's life will no longer return. Our family will never have another phone call or visit with him, so all we ask is for justice to served and these me to be give the maximum sentence. Amaury had people who loved him and I will show face for him every court day till these men pay for the damage they have caused most importantly to my son Amaury JR.

Sincerely,
Natasha Rosario

# Exhibit B

## (Letter from Scarlet Paulino, Amaury's Sister)

**From:**     natasha rosario
**To:**       Rodriguez, Justin (USANYS) 8
**Subject:**  Amaury sister Scarlet
**Date:**     Wednesday, August 7, 2019 9:57:16 PM

To whom it may concern

As Amaurys sister I was on of those people who was most impacted by this lost my brother meant everything to me. I couldn't believe it the only man who raised me and took care of me growing up was gone. It's one of those topics that I'd rather avoid to not feel the pain all over again. When you think of amaury you think of that big smile that when he walked in the room with it everyone else couldn't do nothing but give a huge smile back. My brother was smart, thoughtful, funny, and most importantly caring he cared so much about the people he loved. I as his sister don't attend the court dates to not go back in time to feel it just mentioning him or the situation gives me heartache and heartaches is what every human being tries to avoid this guy who killed him didn't just take away a man he took away a brother a friend a cousin a son and the most hurting a father he didn't get to meet his beautiful son who never wants to leave his grave when we go visit him. I would do anything and everything to make my brother come back home to his family and meet his new niece and his son !

Scarlet Paulino

Sent from my iPhone

# Exhibit C

## (Letter from Jaymarie Genao, Amaury's Niece)

**From:**    Ericka Reyes
**To:**      Rodriguez, Justin (USANYS) 8
**Date:**    Monday, August 12, 2019 6:42:08 PM

To whom it may concern,

     I'm writing this letter to inform you how I feel about my uncles passing . For starters my uncle was a very loving and kind and trustworthy person and our bond was always unbreakable . But , when I found out what happened I couldn't believe what I heard . I thought it was impossible . Nobody really explained to me how it happened but , I always heard the same story . I never really understood how or why someone could ever do this to a innocent man . At that moment I just broke down in tears and since that day nothing has never been the same . This incident happened on Christmas Eve and this holiday won't be the same for me anymore . Losing someone I love is really hard . It's mostly hard to except the fact that he is gone . I was always there for Amaury Paulino and he has always been there for me . He was really overprotective with me and I always knew why . I'm not saying I was his favorite niece but , I sure did mean a lot to him . He will always have a place in my heart and I will always think of him . But , it would be better if he was here .

     Jaymarie Genao

Sent from my iPhone

# **Exhibit D**

## **(Letter from Thomas Sanchez, Amaury's Uncle)**

**From:**        Ericka Reyes
**To:**          Rodriguez, Justin (USANYS) 8
**Subject:**     AMAURY PAULINO
**Date:**        Monday, August 12, 2019 3:01:19 PM

To whom it may concern

   I Thomas Sanchez uncle of Amaury Paulino have been affected a lot since he was tragically taking away from his family. He was a young respectful man with aspirations of doing good for his own little family he was having. No longer is December 24 Christmas Eve it's the day we lost one of the brightest pieces in our family. While everybody celebrates Christmas New Years we stand at a cemetery full of tears and things never said to some one we love that we will never be able to hear him speak our names or even tell us to be safe or whatever else that will forever be left unsaid. I was in the audience at the trail for Mr. Frank Wright and I saw the evidence against him, and I feel as in the outcome of that fatal day where I lost my nephew that the whole thing was premeditated therefore if Frank Wright knew what he was gonna do in that situation then he should be ready to face the consequences for his actions. I don't feel it's right for someone who said he shot my nephew because he didn't respect the "jooks" how it was stated in court to be considered for any minimal time or less time for a crime in which beyond a shadow of a doubt he committed long as we are suffering as a family I feel he should too and so should his family they can still see him alive in jail where can I see my nephew besides in my memory or photos or when I look at his son. So please don't consider less time I feel like it would be an injustice to our family.

Sent from my iPhone

# **Exhibit E**

## **(Letter from Stephanie Rosa, Amaury's Cousin)**

**From:** Ericka Reyes
**To:** Rodriguez, Justin (USANYS) 8
**Subject:** AMAURY PAULINO
**Date:** Thursday, August 8, 2019 2:06:45 PM

August 8, 2019

To whom it may concern,

I'm writing this letter in regards to the passing of my cousin Amaury Paulino. His passing has affected the entire family, my children and I are hurting everyday because we are no longer able to see his beautiful smile. Amaury was very family oriented, his passing has cost our family to no longer celebrate the holidays. My aunt Carmen Reyes is not the same after the tragic death of her loving son. Our family will never get over our lost. He will forever live in our hearts and will always be missed.

# **Exhibit F**

## **(Letter from Vanessa Andrada, Amaury's Cousin)**

| | |
|---|---|
| **From:** | natasha rosario |
| **To:** | Rodriguez, Justin (USANYS) 8 |
| **Subject:** | Re: My email address/contact information |
| **Date:** | Wednesday, August 7, 2019 7:56:42 PM |

August 7, 2019
To whom it may concern,

   My name is Vanessa Andrada I am Amaury Paulino young cousin. The day of my cousin Amaury death hurt me so much and still hurts me a lot. Amaury was such a nice , caring and loving person. He was a young man leaving a family behind and forming his little family. There are days that I dream of my cousin Amaury smile. I picture him here with us he was the light of my family eyes. There's no holidays without Amaury. On Christmas and New Years the family gathers to tears in a cemetery. This is not fair for us his family, or his son to grow with out a father. I miss and will always love Amaury Paulino.

                    Vanessa Andrada

Sent from my iPhone

On Aug 7, 2019, at 5:33 PM, natasha rosario ███████████████ wrote:

        Dear Judge Failla,

        After 4 years of waiting for answers, having to sit through two very emotional weeks of trial and dealing with a tedious trial outcome; I can somewhat say I know what happen to the heartless individuals who took my sons fathers life. On December 24th, 2014 i was suppose to be telling my mother the good news that Amaury and I were expecting our first child, instead I had to give her the new that he has passed. A holiday is something your suppose to look forward too but instead to me Christmas Eve is a day I wish I could skip each calendar year. My son never met his father. He will never know how one of his hugs feel like because of Frank Bright and John Duncan. He will not understand until he's older why I no longer wish to celebrate Christmas or why I don't like walking past certain streets. My child will never understand what is to receive a fathers love because of December 24, 2014. These individuals will still have the gift of life after their time served but Amaury's life will no longer return. Our family will never have another phone call or visit with him, so all we ask is for justice to served and these me to be give the maximum sentence. Amaury had people who loved him and I will show face for him every court day till these men pay for the damage they have caused most importantly to my son Amaury JR.

        Sincerely,
        Natasha Rosario

        - Spoke to members of his family they said by Monday they should have the letters gather up.

        Sent from my iPhone

        On Aug 7, 2019, at 4:33 PM, Rodriguez, Justin (USANYS) 8

# Exhibit G

## (Letter from Yessenia Andrada, Amaury's Cousin)

| | |
|---|---|
| **From:** | yessenia andrade |
| **To:** | Rodriguez, Justin (USANYS) 8 |
| **Subject:** | Amaury paulino |
| **Date:** | Monday, August 12, 2019 4:21:44 PM |

To whom it may concern ;                      My name is Yessenia Andrade. I am writing this letter in regards of my cousin Amaury paulino traumatic loss and the big impact it cause my family and myself. All we want and all we are asking is for justice to be serve. No one have the right to take or to decide when to take  another person's life away. My cousin Amaury paulino was preventing from getting robbed which that was one of Mr. Frank Wright intentions as well as his other intentions was to kill him. Frank wright had  all the bad intentions I don't think he even deserve the right to ask for a lower sentence. He dint thought about twice the pain he would cause. Every holidays is not the same every December 24,25,31 we have to visit the cemetery crying for Amaury paulino loss. Frank wright left a child fatherless he left this family in pain, I went through a really  taught time myself since I was 36 week pregnant I was going through depression , stress pain  after my cousins loss  to the point I had to get an induce labor. This was a very traumatic time and situation and the fact that my family and myself was all present at Mr Frank Wright trial we had to revive all this pain all over again. It was more painful to witness how Mr. Wright was planning on killing my cousin Amaury Paulino. All we are asking is for the correct justice to be serve he marked this family for life. Yesterday he killed my cousin tomorrow who can it be?.

Sent from my iPhone

# **Exhibit H**

**(Letter from Edwin Reyes, Amaury's Cousin)**

**From:**      natasha rosario
**To:**        Rodriguez, Justin (USANYS) 8
**Subject:**   Edwin Reyes - Amaury Paulino
**Date:**      Monday, August 12, 2019 4:41:02 PM

My name is Edwin Reyes, I think I speak for everyone related to AMAURY that we are devastated by his passing, Family & holidays haven't been the same since. Now all we have left are memories of who and what he meant to us.  There isn't words to describe how such a tragedy like this will make anyone feel, but (ME) we are beyond heart broken.....

Sent from my iPhone

# **Exhibit I**

## **(Letter from Erika Reyes, Amaury's Cousin)**

**From:** Ericka Reyes
**To:** Rodriguez, Justin (USANYS) 8
**Subject:** AMAURY PAULINO
**Date:** Wednesday, August 7, 2019 9:11:15 PM

Dear judge Failla

My name is Ericka Reyes i am Amaurys Paulinos cousin . I remember it like it was yesterday when i recieved the worst call of my life . The pain of loosing amaury has not heeled and i know it will never heel . I do not wish this pain on anyone , not only was he my cousin he was my best friend my brother. There was not a day in my life that passed and we didnt speak.  Everyday i miss him more and more . His absence has broke my family and i down. Every year on Christmas eve instead of celebrating and opening gifts my family and i go to the cementary and cry because its still so unreal how hes gone .We lost him on a holiday, 2 days after his birthday this pain is unbearable .  Amaury wasn't perfect but he didn't deserve to die how he did , no one deserves that . I ask you judge failla to please give frank what you in your heart think is fair . Yet i also ask you to put yourself in my and my family's place . There is no pain like the pain of loosing a loved one .  May justice be served thank you and may god bless you .

Sincerely

Ericka Reyes

Sent from my iPhone

# **Exhibit J**

## **(Letter from Melvin Reyes, Amaury's Cousin)**

**From:** natasha rosario
**To:** Rodriguez, Justin (USANYS) 8
**Subject:** Melvin Reyes -Amaury Paulino
**Date:** Monday, August 12, 2019 4:37:37 PM

To whom  it may concern

      My name is Melvin Reyes I am Amaury Paulinos cousin the situation that my family and I have been going thru ever since that horrifying incident. It's hard to express they're is no amount of emotions or words that could make anybody or any one understand what he meant to us as A brother cousin nephew or father ever since December 24 2014 we have been living a cruel truth about what took place that last day of our beloved Amaury Paulino life ever since then this has been my only emotion toward anything that has to do with Amaury

Sent from my iPhone

# **Exhibit K**

## **(Letter from Sadha Maldonado, Melvin Reyes' Girlfriend)**

| | |
|---|---|
| **From:** | natasha rosario |
| **To:** | Rodriguez, Justin (USANYS) 8 |
| **Subject:** | Sadha Maldonado - Amaury Paulino |
| **Date:** | Monday, August 12, 2019 4:36:26 PM |

To whom it may concern

My name is Sadha Maldonado I am Melvin Reyes girlfriend cousin of Amaury Paulinos. This horrible tragedy has affected not only myself but his whole entire family, as an outsider I see the pain and suffering his whole family has and are still going through. It hasn't been easy for them. Holidays family reunions will never be the same he left behind not only his family but a young handsome little boy that shouldn't grow up without his father because someone decided to take his life away. His son will not know his father unless it's via his family and the memories they have or the stories they have about his father. That day caused a snowball affect that will never stop and for that we seek justice.

Sent from my iPhone