UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK BRIGHT,

                                Movant,

                -v.-

UNITED STATES OF AMERICA,

                                Respondent.

23 Civ. 4524 (KPF)
18 Cr. 56-1 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

    This Order resolves Movant Frank Bright's motion for reconsideration of this Court's Opinion and Order of October 31, 2023 (the "October 31, 2023 Opinion"), which opinion denied Mr. Bright's motion to vacate his conviction pursuant to 28 U.S.C. § 2255.  *See Bright* v. *United States*, No. 18 Cr. 56-1 (KPF), 2023 WL 7167881, at *1 (S.D.N.Y. Oct. 31, 2023).  (Dkt. #169).[1]  The Court presumes the reader's familiarity with the substantive and procedural histories of this prosecution that have been outlined in prior decisions.  *See, e.g.*, *United States* v. *Bright*, No. 21-2453, 2023 WL 2469767, at *1 (2d Cir. Mar. 13, 2023) (summary order); *United States* v. *Bright*, No. 18 Cr. 56-1 (KPF), 2021 WL 4084391, at *1 (S.D.N.Y. Sept. 8, 2021); Dkt. #148 (transcript of May 25, 2021 oral decision denying motion to withdraw guilty plea); Dkt. #140 (September 8, 2021 order denying motion for reconsideration of May 25, 2021 decision and for compassionate release pursuant to 18 U.S.C.

---

[1]    Record citations in this Order are to the docket in the criminal case.

    The Court takes this opportunity to thank appointed counsel from the law firm of Morvillo Abramowitz Grand Iason & Anello PC for their excellent work in this matter.

§ 3582(c)(1)(A)(i)).  For the reasons set forth in the remainder of this Order, the Court denies the motion for reconsideration.

## APPLICABLE LAW

Consistent with Federal Rule of Civil Procedure 59(e), a party may move "to alter or amend a judgment" in a civil case, including a case brought pursuant to 28 U.S.C. § 2255.  *See* Fed. R. Civ. P. 59(e); *see also* Local Civil R. 6.3 (addressing motions for reconsideration); *Lee* v. *United States*, No. 07 Cr. 3 (LAP), 2024 WL 3520274, at *3 (S.D.N.Y. July 24, 2024); *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014).  In considering a Rule 59(e) motion, courts look to whether the movant has demonstrated "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted); *Anwar* v. *Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011) ("Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" (internal citations omitted)). "The standard for reconsideration is strict and the decision [to grant or deny the motion] is within the sound discretion of the district court."  *Herrera* v. *United States*, No. 18 Cr. 13 (NRB), 2020 WL 1322543, at *1 (S.D.N.Y. Mar. 19, 2020) (citation omitted).

A motion for reconsideration is not "an occasion for repeating old arguments previously rejected[.]"  *Associated Press* v. *U.S. Dept. of Defense*, 395

F. Supp. 2d 17, 19 (S.D.N.Y. 2005) (citations omitted); *see also Shrader* v. *CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Conversely, a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc.* v. *Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations omitted); *see also Anwar*, 800 F. Supp. 2d at 573 ("A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."); *Weiss* v. *El Al Isr. Airlines, Ltd.*, 471 F. Supp. 2d 356, 358 (S.D.N.Y. 2006) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue.").

## DISCUSSION

In its opposition to Mr. Bright's motion, the Government articulates "five independent reasons" militating in favor of denial of the motion. (Dkt. #173 at 2-6). However, after reviewing a draft of Mr. Bright's counseled reply submission, the Government withdrew the first two of those reasons, which concerned the timeliness *vel non* of his motion. (Dkt. #177). To varying

degrees, the Court agrees with the Government's arguments against reconsideration, and it therefore expressly incorporates them by reference.[2]

Two of the Government's arguments merit particular mention. *First*, the Court agrees with the Government that the Court did *not* overlook Mr. Bright's current argument for vacatur of his conviction because that argument was not made in his original Section 2255 motion. (*See* Dkt. #173 at 3-4; *see also* Dkt. #179 at 3 ("Properly read, Mr. Bright's § 2255 Motion clearly 'suggests' the jurisdictional argument he has since clarified in his motion for reconsideration.")). As discussed in the Court's October 31, 2023 Opinion, Mr. Bright's arguments for vacatur of his conviction included (i) *ipse dixit* claims of "actual innocence," as well as (ii) claims that prior counsel had provided ineffective assistance of counsel in failing to disclose the Government's decision not to obtain a superseding charging instrument and in not moving to dismiss the operative indictment for failure to specify the object of the charged conspiracy. *See* 2023 WL 7167881, at *12-13; *cf. id.* at 12 ("Beginning with the deficient performance prong of the *Strickland* analysis, the Court observes that,

---

[2]    In his opening brief for reconsideration, Mr. Bright argued that the Court "overlooked and did not decide his essential 'actual innocence' claim, where he contended that there was no agreement to violate federal law." (Dkt. #26 at 5). The Government responded that the motion for reconsideration failed, in part, because "neither the Supreme Court nor the Second Circuit nor any Circuit has recognized a freestanding claim of actual innocence as a basis for habeas relief." (Dkt. #173 at 4 (collecting cases)). The Government also discussed the very high burden attendant to actual innocence claims. (*Id.* at 5). Mr. Bright's counseled reply attacks the Government for responding to an argument that Mr. Bright himself raised, and instead maintains that Mr. Bright's claim is a proper challenge to "the constitutional and jurisdictional bases for his prosecution." (Dkt. #179 at 4). Whether the claim is framed as one for actual innocence or for constitutional or jurisdictional errors, the Court finds no basis in the record for vacatur of Mr. Bright's conviction.

as suggested by the preceding section, the Second Circuit's affirmance of this Court's denial of Bright's Rule 11 motion would seem to foreclose any finding that trial counsel was somehow ineffective in allowing Bright to plead guilty.  In other words, Bright's trial counsel cannot be tasked with deficient performance for allowing him to plead guilty, where both the District Court and the Second Circuit found that Bright had failed to articulate a fair and just reason to withdraw his plea.").  Despite the wishful thinking of his current claims for reconsideration (*see* Dkt. #179 at 3) — and even construing liberally his original *pro se* claims, *see Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) — Mr. Bright only challenged the adequacy of the text of the indictment, and never suggested an inadequacy in his plea allocution (*see* Dkt. #170 at 9-11 (opening brief); Dkt. #167 (reply)).  As such, his current arguments for vacatur go far beyond the scope of a proper motion for reconsideration.

    *Second*, and more pointedly, Mr. Bright's current challenges to his conviction fly in the face of his sworn statements during his plea allocution, which statements are accorded a "strong presumption of verity."  *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977); *see also United States* v. *Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016); *cf. United States* v. *Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").  To be sure, Mr. Bright has repeatedly stated that he entertained the possibility that the oxycodone pills offered to him by Amaury Paulino and Lazaro Martinez were fake.  However, he always held open the possibility that the pills were

real, and it is for this reason that he repeatedly averred during his plea allocution that he conspired to rob Messrs. Paulino and Martinez of oxycodone, and not sham oxycodone.  (*See* Dkt. #85 at 35 ("In December 24th, 2014, near 129th Street in Manhattan, I agreed with another person to rob oxycodone pills from two drug dealers."), 39 (responding in the affirmative to Court's inquiries into whether he "agree[d] with someone else, and the agreement that you had was to rob drug dealers *of what you understood to be oxycodone*" and whether he intended "to display or to use force or the threat of force, or violence, or fear *in order to obtain the oxycodone*" (emphases added); *see also id.* at 36 (defense counsel agreeing "that the robbing of oxycodone would affect interstate commerce")).[3]

In his counseled reply, Mr. Bright chides the Court for not asking the follow-up question of whether Mr. Bright "believed he was robbing real or fake 'oxycodone.'" (Dkt. #179 at 9).  Such an argument borders on the frivolous. The "oxycodone" to which Mr. Bright allocuted was necessarily real oxycodone. After all, fake oxycodone is not oxycodone at all, and there was accordingly no reason for this Court to ask a follow-up question clarifying whether the

---

[3]    The Court acknowledges that its imprecision in the October 31, 2023 Opinion may have muddied the waters.  *See Bright* v. *United States*, No. 18 Cr. 56-1 (KPF), 2023 WL 7167881, at *1 (S.D.N.Y. Oct. 31, 2023) ("Duncan then sought backup from Bright, asking that the latter 'hold him down' in the event that problems arose in the transaction; Bright agreed, but opined that the pills were surely fake because of their low price.").  The Court has always understood that Mr. Bright contemporaneously believed that the pills *could* be real oxycodone — hence its questions during the plea allocution.  Similarly, while the Court discussed at sentencing certain testimony regarding the object of the robbery that was arguably in conflict, it ultimately concluded that what had begun as a "drug deal" evolved into a "drug robbery" of oxycodone.  (Dkt. #106 (sentencing transcript) at 40).

oxycodone to which Mr. Bright allocuted was real or fake.  As it happened, however, the Court *did* ask a follow-up question of Mr. Bright to confirm that he conspired to "rob drug dealers of what [he] understood to be oxycodone" — and not fake oxycodone — and Mr. Bright responded in the affirmative.  Put simply, no one participating in the plea proceeding, including Mr. Bright, misapprehended the factual underpinnings of his guilty plea, and there is no basis to revisit his allocution in this procedural posture.[4]

The instant motion for reconsideration is yet another attempt by Mr. Bright to extricate himself from an extraordinarily favorable plea agreement that was negotiated by his prior counsel.  His prior attempts have been soundly rejected by this Court and the Second Circuit, and there is no basis to treat this attempt any differently.

## CONCLUSION

For the reasons stated above, the Court DENIES Bright's motion to reconsider the Court's October 31, 2023 Opinion.  Once again, because Bright has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c).  The Court further certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this

---

[4]     While the Court agrees with the Government that there is sufficient evidence in the record to find that the robbery that Mr. Bright conspired to commit affected interstate commerce even if it involved fake oxycodone pills, on the theory that robbing drug dealers of even fake controlled substances has an effect on interstate commerce (*see* Dkt. #143 at 6), the Court believes that Mr. Bright clearly and unequivocally allocuted to conspiring to rob Messrs. Paulino and Martinez of real oxycodone.  *See generally United States* v. *Orelien*, 119 F.4th 217, 224 (2d Cir. 2024) (discussing categorical and individual analyses of Hobbs Act's interstate commerce element).

Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the motions pending at docket entry 26 in Case No. 23 Civ. 4524 and docket entry 170 in Case No. 18 Cr. 56-1, to docket this Order in both cases, and to close Case No. 23 Civ. 4524.

SO ORDERED.

Dated:    December 18, 2024
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge