UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 18 Cr. 56-1 (KPF) |
| FRANK BRIGHT, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Frank Bright, who is currently housed at the Schuylkill Federal Correctional Institution in Minersville, Pennsylvania ("FCI Schuylkill"), has moved for compassionate release, in the form of a reduction in sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  In support, Mr. Bright cites changed medical issues, changed family circumstances, his rehabilitation while incarcerated, and his "relative[ ] non-participation" in his offense of conviction.  The Government opposes the motion.  As set forth in the remainder of this Order, the Court denies Mr. Bright's motion.

## BACKGROUND

### A.    Factual Background

Both this Court and the United States Court of Appeals for the Second Circuit have written extensively about Mr. Bright's offense conduct and his prosecution for that conduct; this Court incorporates those decisions here by reference.  *See, e.g.*, *United States* v. *Bright*, No. 19-2748, Dkt. #64 (2d Cir. Sept. 1, 2020) (granting Government motion to dismiss Mr. Bright's appeal of his term of imprisonment and supervised release; granting Government motion for summary affirmance of Mr. Bright's conviction and special assessment;

remanding for reimposition of special conditions of supervised release); *United States* v. *Bright*, No. 21-2453, 2023 WL 2469767 (2d Cir. Mar. 13, 2023) (affirming denial of motion to withdraw guilty plea); *United States* v. *Bright*, No. 18 Cr. 56-1 (KPF), 2021 WL 4084391 (S.D.N.Y. Sept. 8, 2021) (denying motion for reconsideration of Court's prior decisions to withdraw his guilty plea and to dismiss the indictment); *Bright* v. *United States*, Nos. 23 Civ. 4524 (KPF), 18 Cr. 56-1 (KPF), 2023 WL 7167881 (S.D.N.Y. Oct. 31, 2023) (denying motion pursuant to 28 U.S.C. § 2255) ("*Bright 2255 Op.*"); *Bright* v. *United States*, Nos. 23 Civ. 4524 (KPF), 18 Cr. 56-1 (KPF), 2024 WL 5301744 (S.D.N.Y. Dec. 18, 2024) (denying motion for reconsideration) ("*Bright 2255 Recon Op.*").[1]

The offense conduct can be summarized briefly:  On December 24, 2014, Mr. Bright agreed with co-defendant John Duncan to rob two drug dealers, Lazaro Martinez and Amaury Paulino, of their oxycodone pills.  (*See* Final Presentence Investigation Report ("PSR" (Dkt. #99)) ¶¶ 14-17).  They met Mr. Martinez and Mr. Paulino later that night in a car parked in front of 400 St. Nicholas Avenue in upper Manhattan, ostensibly to purchase the pills for further distribution.  (*Id.* ¶ 18).  After Mr. Martinez handed over the oxycodone pills, Mr. Bright pulled out a gun and demanded that Mr. Martinez and Mr.

---

[1]     Except as otherwise indicated, record citations in this Order are to the docket in the criminal case.  For ease of reference, the Court refers to Mr. Bright's memorandum in support of his motion as "Def. Br." (Dkt. #185), and to the Government's letter brief in opposition as "Gov't Opp." (Dkt. #187).  Page references in Mr. Bright's submissions reflect the page numbers provided by the Court's electronic case filing ("ECF") system. The Court has also received medical records regarding Mr. Bright and his family members.  Given the sensitive information discussed therein, these records have been maintained under seal, and the Court cites to them by referring to the date and type of the particular record.

Paulino surrender their valuables.  (*Id.* ¶ 19).  When Mr. Paulino refused, Mr. Bright shot him from behind and pierced his heart.  (*Id.*).  After Mr. Bright, Mr. Duncan, and Mr. Martinez fled the car, Mr. Paulino attempted to drive away but crashed his car; Mr. Paulino later died from internal bleeding caused by the bullet.  (*Id.* ¶ 21).

## B.    Procedural Background

This Court's prior decisions resolving Mr. Bright's Section 2255 motion detail the procedural history of his case, and this Court therefore picks up where those decisions left off.  *See Bright 2255 Op.*, 2023 WL 7167881, at *2-8; *Bright 2255 Recon Op.*, 2024 WL 5301744, at *1-3.  Mr. Bright did not appeal from the Court's denial of his Section 2255 motion; instead, in a motion received by the Court on August 29, 2025, Mr. Bright moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. #185).  The Court ordered a response from the Government (Dkt. #186); in a letter brief filed on October 14, 2025, the Government opposed Mr. Bright's motion (Dkt. #187).

## DISCUSSION

## A.    Applicable Law

Under 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018) (the "FSA), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons (the "BOP"), or upon motion of the defendant.  A defendant may move under Section 3582(c)(1)(A)(i) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under Section 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see* [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir.

> 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Rodriguez*, 147 F.4th 217, 222 (2d Cir. 2025); *United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022). The district court's discretion includes the power to reduce, as well as to eliminate, the remaining term of a defendant's sentence. *See Brooker*, 976 F.3d at 237.

The United States Sentencing Commission amended the policy statement contained at U.S.S.G. § 1B1.13, effective as of November 1, 2023, to provide guidance as to what constitutes extraordinary and compelling circumstances in defendant-initiated (as distinguish from BOP-initiated) compassionate release requests. This amendment "as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release motion, however initiated." *United States* v. *Lopez*, No. 16 Cr. 317-22 (PAE), 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024).

As relevant here, courts may consider the medical circumstances of a defendant, including whether the defendant is (i) "suffering from a serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," or (ii) "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death.  U.S.S.G. § 1B1.13(b)(1)(B)-(C).

The amended policy statement also recognizes that family circumstances can constitute extraordinary and compelling reasons, as, for example, "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent."  U.S.S.G. § 1B1.13(b)(3)(C).  This paragraph of the amended policy statement further specifies that an extraordinary and compelling reason can be found in situations involving the incapacitation of "any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member," including a grandparent.  *See id.* § 1B1.13(b)(3)(D).

In addition to the listed factual circumstances, the amended U.S.S.G. § 1B1.13 contains a catch-all provision that allows consideration of "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)."  U.S.S.G. § 1B1.13(b)(5).  Finally, while the amended policy statement

6

confirms that "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," it notes that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.* § 1B1.13(d).

As suggested by *Keitt*, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court must release the defendant."  *United States* v. *Madoff*, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). Even if a court finds that a defendant has established an extraordinary and compelling reason for a reduction in sentence, it still must then consider the § 3553(a) factors.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Rodriguez*, 147 F.4th at 222 ("If the court determines that the § 3553(a) factors weigh against a sentence reduction, it may deny the motion on that basis alone." (citing *Keitt*, 21 F.4th at 73)).  "The burden of showing that the circumstances warrant a sentence reduction is on the defendant."  *United States* v. *Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) (citing *Jones*, 17 F.4th at 375), *cert. granted in part*, 145 S. Ct. 2731 (2025).

## B.    Analysis

The Government does not dispute, for purposes of this motion, that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied.  (*See* Def. Br. 11 (response from Warden); Gov't Opp. 4 (acknowledging that Mr. Bright "has exhausted his administrative remedies")).  The Court thus proceeds

7

to consider whether Mr. Bright has identified "extraordinary and compelling reasons" warranting his release.  It concludes that he has not.

### 1. Mr. Bright Has Failed to Present an Extraordinary and Compelling Reason for Compassionate Release

#### a. Mr. Bright's Medical Issues

The Court begins with Mr. Bright's claims regarding his medical conditions and the care he has received for them while incarcerated; these conditions include chronic kidney disease (at Stage 3(a)), "localized swelling," Vitamin D deficiency, toenail fungus, epilepsy/seizure disorder, and several dental issues.  (Def. Br. 4-5).  However, these conditions, whether considered individually or collectively, do not constitute a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he ... is not expected to recover," or a "medical condition that requires long-term or specialized medical care" that Mr. Bright's detention facility cannot provide, and the absence of which risks his "serious deterioration in health or death."  U.S.S.G. § 1B1.13(b)(1).

Mr. Bright does not specify how BOP is failing to manage or treat his medical conditions.  "Even assuming [Mr. Bright's] conditions require long-term or specialized care, the presence of a health condition requiring long-term or specialized care does not by itself establish an extraordinary and compelling circumstance warranting a sentence reduction" without evidence that "the BOP is unable to care for an inmate with those conditions."  *United States* v. *Radulescu,* No. 19 Cr. 651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16,

2024); *see also United States* v. *Gaton*, No. 02 Cr. 401 (KMW), 2026 WL 1132836, at *3 (S.D.N.Y. Apr. 27, 2026) ("[The defendant's] generalized allegations of inadequate care for medical conditions do not suffice to show that the BOP is failing to attend to his medical conditions."); U.S.S.G. § 1B1.13(b)(1)(C) (requiring a showing of "long-term or specialized medical care that is not being provided").  This Court has reviewed with care approximately 400 pages of Mr. Bright's BOP medical records covering the past several years; these records make clear that Mr. Bright is receiving adequate care for his medical conditions on a regular basis.  Indeed, as the Government points out (Gov't Opp. 5), Mr. Bright's own noncompliance with treatment protocols may be to blame for any exacerbation of his symptoms (*see, e.g.*, Clinical Encounter Notes dated January 5, 2025, and February 2, 2025 (noting failure to appear at pill line for seizure medication)).

### b.    Mr. Bright's Family Issues

Separately, Mr. Bright argues that he is the only available caregiver for his grandmother, Joyce Bright, because her current caregiver, his mother Lynette Bright, is in declining health.  (Def. Br. 6-11).[2]  The Court is saddened to learn of the medical issues affecting Mr. Bright's grandmother and mother.  However, Mr. Bright has failed to demonstrate that he is "the only available caregiver" for his grandmother.  To the contrary, both he and the PSR reference a sister, Lyneisha Bright.  (Def. Br. 7; PSR ¶ 48).  Mr. Bright maintains that

---

[2]    Mr. Bright has submitted selected medical records for Lynette and Joyce Bright that this Court has reviewed.

Lyneisha Bright "is living a life of her own and dealing with her own circumstan[c]es," and, more broadly, that "there is no other relative willing or able to care for Joyce [B]right and professional home care aid[e]s are not a viable alternative." (Def. Br. 7). However, the reluctance of Mr. Bright's relatives to assist in Joyce Bright's care does not constitute an extraordinary and compelling circumstance in this setting. *See United States* v. *Pilitz*, No. 17 Cr. 53 (JS), 2025 WL 2324218, at *5 (E.D.N.Y. Aug. 12, 2025) (collecting cases where district courts have accepted, and rejected, claims that a defendant is the only available caregiver for a parent); *United States* v. *Sanchez*, No. 01 Cr. 74-2 (PAC), 2023 WL 7103277, at *6 (S.D.N.Y. Oct. 27, 2023) ("While the external commitments of [the defendant's] family members might make caretaking difficult, that is 'merely the inevitable circumstances families face when a family member is incarcerated,' not an extraordinary and compelling reason to reduce a sentence." (internal citations omitted)), *aff'd*, No. 23-7777, 2024 WL 4647668 (2d Cir. Nov. 1, 2024) (summary order); *cf. United States* v. *Lisi*, 440 F. Supp. 3d 246, 251-52 (S.D.N.Y. 2020) (finding extraordinary and compelling circumstances where "the Court received evidence from several sources," including from "[the defendant], his mother, and numerous others," indicating that the defendant is "the only available caregiver for his mother," but denying Section 3582(c)(1)(A)(i) motion based on analysis of sentencing factors).

### c.    Mr. Bright's Rehabilitation

Finally, Mr. Bright argues that his extensive rehabilitative efforts while incarcerated amount to an extraordinary and compelling reason for his release. (Def. Br. 2, 4, 8).  These efforts are commendable, and the Court is pleased to learn that Mr. Bright has spent his time in prison productively.  As noted, however, rehabilitation is not, by itself, sufficient to constitute an extraordinary and compelling circumstance, though "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d); *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  Here, the Court finds that Mr. Bright's other proffered bases for relief do not amount to extraordinary and compelling reasons for his release, and it will not grant his motion based on his rehabilitation alone.  *Cf. United States* v. *Muyet*, No. 95 Cr. 941 (LAP), 2024 WL 2830825, at *5 (S.D.N.Y. June 3, 2024) ("Simply put, the evidence of rehabilitation offered by Defendant does not, alone or in combination with all other relevant considerations, establish extraordinary and compelling reasons for a reduction in his sentence."); *United States* v. *Raposo*, No. 98 Cr. 185 (JPC), 2024 WL 165195, at *9 (S.D.N.Y. Jan. 16, 2024) ("And given the Court's findings that [the defendant's] other arguments do not constitute extraordinary

and compelling reasons, even evidence of complete rehabilitation cannot suffice.").[3]

### 2.    The Section 3553(a) Factors Counsel Against Compassionate Release

Even if the Court were to find that Mr. Bright's proffered bases for compassionate release were "extraordinary and compelling," it would still deny his motion after considering the factors set forth in 18 U.S.C. § 3553(a).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal

---

[3]    Mr. Bright renews several arguments made in his prior motions, including claims that he was misadvised concerning the Government's efforts to obtain a superseding charging instrument after his mistrial and that the oxycodone he conspired to rob was fake. (Def. Br. 8).  However, claims directed to the validity of Mr. Bright's conviction do not suffice to constitute a basis for compassionate release.  *See United States* v. *Fernandez*, 104 F.4th 420, 427 (2d Cir. 2024) ("[T]he validity of a conviction or sentence can be challenged only on direct appeal or collateral review, which have specifically calibrated procedural limitations.  Permitting such challenges as cognizable 'extraordinary and compelling reasons' on a motion for compassionate release would circumvent the procedural limitations of direct and collateral review[.]").  Moreover, the Court has already addressed these arguments in its prior decisions.  *See, e.g., United States* v. *Bright*, No. 18 Cr. 56-1 (KPF), 2021 WL 4084391, at *2-3 (S.D.N.Y. Sept. 8, 2021) (rejecting defense motion to withdraw guilty plea after concluding that "the record does establish that Mr. Bright knew, or should have known, at the time he signed the plea agreement and entered his guilty plea the relevant contents of the April 16 letter — namely, that the Government would not obtain a superseding indictment in his case"), *aff'd*, No. 21-2453, 2023 WL 2469767 (2d Cir. Mar. 13, 2023) (summary order); *Bright* v. *United States*, Nos. 23 Civ. 4524 and 18 Cr. 56-1 (KPF), 2024 WL 5301744, at *3 (S.D.N.Y. Dec. 18, 2024) (rejecting "fake oxycodone" challenge to Mr. Bright's conviction: "To be sure, Mr. Bright has repeatedly stated that he entertained the possibility that the oxycodone pills offered to him by Amaury Paulino and Lazaro Martinez were fake. However, he always held open the possibility that the pills were real, and it is for this reason that he repeatedly averred during his plea allocution that he conspired to rob Messrs. Paulino and Martinez of oxycodone, and not sham oxycodone.").

12

conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(C).

It is not an overstatement for this Court to observe that the one constant in Mr. Bright's submissions is his refusal to accept responsibility for shooting and killing Amaury Paulino on Christmas Eve 2014. An entire section of Mr. Bright's compassionate release submission is devoted to arguing his "relative[ ] non-participation in the criminal offense." (Def. Br. 8). In it, Mr. Bright maintains that his "position of guilt arose from his decision to stand watch while [Mr. Duncan] removed pills believed to be cloned as oxycodone." (*Id.*). Not so. During his guilty plea, Mr. Bright allocuted to agreeing "with another person to rob oxycodone pills from two drug dealers. During the robbery, Mr. Paulino was shot and killed." (Dkt. #85 at 35). The evidence presented to the Court makes plain that Mr. Bright shot Mr. Paulino while sitting behind him in a car, at a time when Mr. Paulino posed no threat to him, because Mr. Paulino refused to turn over his valuables. (*See, e.g.*, PSR ¶¶ 10(b) (referencing plea agreement stipulation to shooting Mr. Paulino), 19 (discussion of shooting)). What is more, killing another person did not deter Mr. Bright from committing additional crimes: The PSR reflects both a September 2016 arrest for possessing a firearm and a November 2016 arrest for harassment, both of which resulted in guilty pleas. (*Id.* ¶¶ 40-41). The Court has no confidence that Mr. Bright has learned from his prior prosecutions or that he will steer clear of criminal activity upon his release, and it therefore denies his motion on this basis as well.

13

**CONCLUSION**

For the reasons set forth in this Order, the Court denies Mr. Bright's motion for compassionate release.  The Clerk of Court is directed to terminate the motion pending at docket entry 185, and to mail a copy of this Order to Mr. Bright at the following address:

> Frank Bright
> Reg. No. 69752-066
> FCI Schuylkill
> Federal Correctional Institution
> P.O. Box 759
> Minersville, PA   03570

SO ORDERED.

Dated:   April 29, 2026
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge